1

2

3

4                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
5                              AT SEATTLE

6    NATIONAL PARKS CONSERVATION
     ASSOCIATION,
7
                        Plaintiff,
8                                                    C19-645 TSZ
        v.
9                                                    ORDER
     U.S. DEPARTMENT OF THE NAVY,
10
                        Defendant.
11

12          THIS MATTER comes before the Court on a motion for summary judgment

13   brought by defendant United States Department of the Navy ("Navy"), docket no. 27,

14   and a motion for summary judgment brought by plaintiff National Parks Conservation

15   Association, docket no. 32.  Having reviewed all papers filed in support of, and in

16   opposition to, the motions,[1] the Court enters the following order.

17   _____

18   [1] Plaintiff's motion, docket no. 47, to strike portions of defendant's reply, docket no. 43, as well
     as the declarations of Bradford B. Byrnes, docket no. 44, and Commander Erin Quay, docket
19   no. 45, is DENIED.  Although the descriptions in these materials, concerning the types of
     custodians from whom records responsive to plaintiff's Freedom of Information Act ("FOIA")
20   requests were sought, should have been included in defendant's opening brief and supporting
     declarations, the information does not alter the nature of the parties' dispute.  Plaintiff contends
21   that it is entitled, under FOIA, to know the identities of each custodian, and defendant asserts
     that the statute does not require disclosure of the names of individuals involved in processing
22   FOIA requests.  This legal issue must still be resolved notwithstanding the Navy's description in
     its reply materials of the positions and job functions of the various unidentified custodians, and
     no purpose would be served by striking the Navy's submissions.
23

ORDER - 1

## I. **Background**

This matter concerns the following requests for information made by plaintiff:

- **2016 FOIA Request**:  Submitted to the Navy on June 10, 2016, this request seeks documents relating to the noise and other impacts associated with naval training exercises on or above Olympic National Park, the Olympic National Forest, and the Olympic Peninsula;

- **2018 FOIA Request**:  Submitted to the Navy on December 13, 2018, this request seeks the same information as the 2016 FOIA Request, but from June 10, 2016, to the date of the new search;

- **May 2019 NEPA/FOIA Request**:  Emailed to the Navy pursuant to the National Environmental Policy Act ("NEPA") on May 31, 2019, and converted to a FOIA request in the fall of 2019, this request seeks information related to certain statements in the March 2019 draft of the Northwest Training and Testing Supplemental Environmental Impact Statement/Overseas Environmental Impact Statement ("NWTT Draft Supplemental EIS/OEIS"); and

- **2019 EPA Referral**:  Submitted to the Environmental Protection Agency ("EPA") on May 10, 2019, and referred to the Navy on June 24, 2019, this request seeks communications between the EPA and the Navy regarding the NWTT Draft Supplemental EIS/OEIS.

After two administrative appeals, the Navy has produced roughly 19,695 pages of redacted and unredacted documents in response to the 2016 FOIA Request and the 2018 FOIA Request.[2]  With respect to the May 2019 NEPA/FOIA Request, the Navy released seven (7) of sixteen (16) responsive documents, and withheld the other nine (9) records

---

[2] The Navy's initial response, in July 2016, to the 2016 FOIA Request consisted of 158 pages of documents, some of which were redacted.  *See* Cassidy Decl. at ¶ 5 (docket no. 34).  As of October 18, 2019, however, the Navy had produced 16,380 pages of materials in response to the 2016 FOIA Request, and on May 8, 2020, the Navy disclosed an additional 56 pages.  Byrnes Decl. at ¶¶ 30 & 36 (docket no. 28).  The Navy's initial response, in February 2019, to the 2018 FOIA Request included 414 pages of records.  *See* Byrnes Decl. at ¶ 18 (docket no. 28); *see also* Cassidy Decl. at ¶ 17 (docket no. 34).  By October 3, 2019, the Navy had provided plaintiff with 2,961 pages of documents in connection with the 2018 FOIA Request, and on May 8, 2020, the Navy released an additional 298 pages.  Byrnes Decl. at ¶ 31 & 36 (docket no. 28).

pending a determination by the Director of Administration in the Office of the Secretary of Defense.  _See_ Quay Decl. at ¶ 23-28, 30 (docket no. 30).  The Navy is waiting on a similar determination by the Office of the Secretary of Defense with respect to 37 records responsive to the 2018 FOIA Request, for a total of 46 documents for which the Navy cannot itself definitively respond to plaintiff's requests.  _See_ Quay Decl. at ¶ 14 (docket no. 38).  In connection with the 2019 EPA Referral, which involved 33 records, the Navy withheld six (6) documents and produced all others in either redacted or unredacted form. _See_ Quay Decl. at ¶¶ 12-13 (docket no. 30).

As required by the Court's Minute Order entered April 8, 2020, docket no. 23, the Navy has provided, with regard to materials that it refuses to disclose, a separate Vaughn Index for each of plaintiff's requests.  _See_ Ex. O to Byrnes Decl. (docket no. 28-15) (2016 FOIA Request); Ex. P to Byrnes Decl. (docket no. 28-16) (2018 FOIA Request); Ex. Y to Quay Decl. (docket no. 30-8) (May 2019 NEPA/FOIA Request); Ex. V to Quay Decl. (docket no. 30-6) (2019 EPA Referral); _see also_ _Vaughn v. Rosen_, 484 F.2d 820 (D.C. Cir. 1973).  Plaintiff challenges (i) the adequacy of the Navy's searches; and (ii) the Navy's assertion of certain exemptions pursuant to which information was either redacted or withheld.  Both parties seek summary judgment on these issues.

## II.  Discussion

### A.  Summary Judgment Standard Relating to Freedom of Information Act Claims

FOIA is premised on the theory that, for a democracy to function properly, citizens must have access to information possessed by the government so that they may expose any corruption and hold public officials accountable.  _See Am. Civil Liberties_

1   _Union ("ACLU") of N. Cal. v. U.S. Dep't of Justice_, 880 F.3d 473, 483 (9th Cir. 2018).

2   FOIA requires that federal agencies make their records available to the public, subject to

3   nine enumerated exemptions.  _Id._; _see_ 5 U.S.C. §§ 552(a)-(b).  The Court is authorized to

4   grant summary judgment if no genuine issue of material fact exists and the moving party

5   is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The "vast majority" of

6   FOIA disputes can be resolved on summary judgment.  _Sandoval v. U.S. Dep't of Justice_,

7   296 F. Supp. 3d 1, 10 (D.D.C. 2017).

8          In the context of a suit challenging a federal agency's discharge of its disclosure

9   obligations under FOIA, the issues before the Court are (i) whether the requested

10  documents are identifiable, _i.e._, whether they exist and can be located; and (ii) if so,

11  whether they have been produced or are exempt from FOIA's inspection requirements.

12  _See_ _Hunton & Williams LLP v. EPA_, 248 F. Supp. 3d 220, 234 (D.D.C. 2017).  In seeking

13  summary judgment as to the first issue, the government may rely on affidavits or

14  declarations containing reasonably specific details about the type of search performed for

15  responsive records, including the search terms used, and averring that all files likely to

16  house any requested materials were searched.  _See id._ at 235-36; _Sandoval_, 296 F. Supp.

17  3d at 11, 14.  The adequacy of an agency's search is measured by a standard of

18  reasonableness, which depends on the circumstances of the case.  _Weisberg v. U.S. Dep't_

19  _of Justice_, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The question is not whether additional

20  responsive documents "might conceivably exist," but rather whether the government's

21  search was "reasonably calculated" to reveal relevant materials.  _Id._

22

23

ORDER - 4

If the agency provides the requisite affidavits or declarations, then the FOIA requester bears the burden of producing evidence suggesting that a genuine dispute of material fact exists as to the adequacy of the government's search. *Hunton*, 248 F. Supp. 3d at 236. As in every civil matter, the party opposing summary judgment must present "affirmative evidence," which is "to be believed" and from which all "justifiable inferences" are to be favorably drawn, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986), and a FOIA plaintiff cannot rebut the presumption of good faith afforded to an agency's affidavits or declarations by asserting "purely speculative claims about the existence and discoverability of other documents," *Sandoval*, 296 F. Supp. 3d at 11. If a FOIA requester seeks summary judgment in its favor, it must satisfy the obligations of a moving party that are set forth in Rule 56.

To the extent that responsive materials have been identified and withheld, the government bears the burden of demonstrating that the asserted FOIA exemption applies to the requested documents. *See Rojas v. FAA*, 941 F.3d 392, 397 (9th Cir. 2019). An agency's affidavits or declarations supporting the employment of a FOIA exemption must, in good faith, describe the withheld information and the reason for nondisclosure in a factual and non-conclusory manner. *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001). Unless the affidavits or declaration are deficient, the Court need not conduct further inquiry into their veracity. *Id.* FOIA exemptions are narrowly construed, *ACLU*, 880 F.3d at 483, but an agency's justification for invoking an exemption is sufficient if it "appears 'logical' or 'plausible.'" *Hunton*, 248 F. Supp. 3d at 235 (citing *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007)). The

Court must "respect the expertise of an agency" in this regard and should "not 'overstep the proper limits of the judicial role in FOIA review.'"  *Id.* (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979)).

**B.    Adequacy of the Navy's Searches**

Plaintiff challenges the adequacy of the Navy's searches on two grounds: (i) the alleged insufficiency of the search terms used by the Navy in connection with the 2016 FOIA Request and the 2018 FOIA Request; and (ii) the Navy's failure to search the records of all individuals identified as "preparers" in certain NEPA documents.  Both arguments lack merit.

**1.    Search Terms**

The 2016 FOIA Request sought the following records:

1.    Any and all documents related to or addressing noise impacts associated with naval training exercises on or above Olympic National Park, the Olympic National Forest, and the Olympic Peninsula;

2.    Any and all documents and communications between the Navy and any other state or federal agency related to noise impacts analyzed in [certain NEPA documents abbreviated as] the 2010 EIS, 2014 EA, and 2015 EIS; [and]

3.    Any and all documents related to or addressing impacts to Olympic National Park or its visitors from naval training exercises on or above the Olympic Peninsula.

2016 FOIA Request, Ex. A to Byrnes Decl. (docket no. 28-1).

The 2018 FOIA Request asked for similar materials:

1.    Any and all documents related to or addressing noise impacts associated with naval or military training exercises on or above Olympic National Park, the Olympic National Forest, the Olympic Peninsula, or the World Heritage Site on the Olympic Peninsula;

ORDER - 6

2.      Any and all documents and communications between the Navy and
any other state or federal agency, or any elected official related to
noise impacts analyzed in [certain NEPA documents abbreviated as]
the 2010 EIS, [the] 2014 EA, the 2015 EIS or any drafts of the
forthcoming 2020 SEIS; [and]

3.      Any and all documents related to or addressing impacts to Olympic
National Park[,] the World Heritage Site on the Olympic Peninsula or
visitors to those locations from naval or military training exercises on
or above the Olympic Peninsula.

2018 FOIA Request, Ex. I to Byrnes Decl. (docket no. 28-9).

To find responsive documents, the Navy used the following search terms:

- "Olympic National Park"
- "Olympic National Park" and "noise"
- "Olympic Peninsula"
- "Olympic Peninsula" and "noise"
- "Olympic National Forest"
- "Olympic National Forest" and "noise"
- "Olympic" and "Military Operations Area"
- "Olympic" and "MOA"
- "ONP"

*See* Byrnes Decl. at ¶ 24 (docket no. 28).  Plaintiff contends that the above list is

incomplete and that the Navy should be required to perform additional searches using the

following words and acronyms:

- "Olympic" or "Olympics"
- "NEPA"
- "EIS"
- "SEIS"
- "EA"
- "Appendix J"
- "Appendix K"
- "World Heritage Site"
- "Growler"
- each term above in combination with "noise"

*See* Pla.'s Resp. at 4 & 12 (docket no. 39).

ORDER - 7

1    The Court agrees with the Navy that plaintiff's position is not reasonable.  With

2    respect to "Olympic" or "Olympics," plaintiff makes no showing that these words would

3    reveal relevant documents that were not discovered using "Olympic" in combination with

4    "National Park," "National Forest," "Peninsula," "Military Operations Area," or "MOA."

5    The commonly-used acronyms "NEPA," "EIS, "SEIS," and "EA" and the generic

6    descriptors "Appendix J" and "Appendix K" are not tailored in any manner to the topics

7    about which plaintiff has requested documents, and searches using these terms in

8    isolation would likely reveal an unmanageable number of non-responsive documents.

9    Similarly, the phrase "World Heritage Site" is overbroad given that Olympic National

10   Park is only one of 24 World Heritage Sites in the United States.  As to "Growler,"

11   plaintiff's FOIA requests contain no reference to this specific model of aircraft, and

12   plaintiff offers no basis for believing that records not located when the Navy searched for

13   materials with Olympic National Park, Forest, or Peninsula in combination with "noise"

14   would be found using solely the word "Growler," and would not be classified or

15   otherwise exempt from disclosure under FOIA.  The Court concludes that no genuine

16   dispute of material fact exists and the Navy is entitled to judgment as a matter of law as

17   to the adequacy of its search terms.[3]

18   _____

19   [3] This issue pertains only to the 2016 FOIA Request and the 2018 FOIA Request.  The May 2019
     NEPA/FOIA Request, which was in the form of an email with a six-page attachment, requested

20   that the Navy make publicly available the information supporting certain statements contained in
     a draft NEPA document.  Ex. M to Smith Decl. (docket no. 33-13).  For example, the May 2019

21   NEPA/FOIA Request sought *inter alia* data for the assertions that (i) 95% of Navy training flight
     time within the Olympic Military Operations Areas occurs at or above 10,000 feet above mean

22   sea level ("MSL"), (ii) Navy aircraft in transit to the Olympic Military Operations Areas
     normally fly at or about 15,000 feet above MSL, and (iii) for the period from 2015 through 2017,

23   an average of 2,224 EA-18Gs (Growlers) per year transited to and from the Olympic Military

1        2.    __Custodians__

2        In coordinating its search for documents sought by the 2016 FOIA Request and

3    the 2018 FOIA Request, the Navy identified 27 custodians, who were instructed to look

4    for both electronic and paper files containing potentially responsive materials.  _See_

5    Byrnes Decl. at ¶¶ 22-23 (docket no. 28).  The Navy has disclosed the names of three of

6    the 27 custodians, and described the other 24 custodians, including one contractor, by

7    position or area of responsibility.  _See id._ at ¶ 22; _see also_ Byrnes Decl. at ¶ 8 (docket

8    no. 44).  Plaintiff's challenge to the Navy's refusal, pursuant to Department of Defense

9    policy, to reveal the identities of custodians who have a military rank of 0-6 (Navy

10

11

_____

12   Operations Areas.  _Id._ (docket no. 33-13 at 3-4).  Plaintiff does not appear to contend that the
     Navy should have used different or additional search terms to locate this type of information.
13   Rather, plaintiff expresses dissatisfaction with the declaration of John Mosher.  Mr. Mosher is
     the Northwest Program Manager for the United States Pacific Fleet's Environmental Readiness
14   Division, and he coordinated the search for materials responsive to the May 2019 NEPA/FOIA
     Request.  _See_ Mosher Decl. at ¶¶ 2 & 9 (docket no. 31).  Mr. Mosher interpreted the May 2019
15   NEPA/FOIA Request as seeking the following categories of information:  (i) internal Navy
     discussions and draft documents relating to the Navy's training activities within the Olympic
16   Military Operations Areas; (ii) data from certain software programs known as the Sierra Hotel
     Aviation Readiness Program ("SHARP") and the Data Collection and Scheduling Tool
17   ("DCAST"); (iii) specific air modeling inputs; and (iv) data residing in the Federal Aviation
     Administration's Performance Data Analysis and Reporting System ("PDARS").  _Id._ at ¶ 11.
18   Mr. Mosher forwarded responsive materials in the Navy's possession to the Navy's attorneys,
     and concluded that the search was complete because "no other records would be maintained in
19   any other locations besides where [he] searched."  _Id._ at ¶ 17.  Plaintiff does not quarrel with
     Mr. Mosher's understanding of the materials demanded in the May 2019 NEPA/FOIA Request,
20   which was, unlike the 2016 FOIA Request and the 2018 FOIA Request, very specific and
     focused, and the Court concludes that Mr. Mosher knew what he needed to find and where to
21   look.  The Court declines plaintiff's invitation to require Mr. Mosher to recite exactly which file
     drawers, computers, and other storage devices he reviewed.  With respect to the 2019 EPA
22   Referral, the documents at issue were forwarded by the EPA to the Navy for review, and plaintiff
     can make no claim that the Navy was required to conduct an independent search for responsive
     records.  _See_ Quay Decl. at ¶ 11 (docket no. 30).

23

ORDER - 9

Captain or below) or a civilian rank of GS-15 or below, <u>see</u> Byrnes Decl. at ¶ 6 (docket no. 29), is addressed separately in Section II.C.3, below.

In arguing that the Navy has not designated a sufficient number of custodians for its search, plaintiff has offered a list of 38 government employees, <u>see</u> Ex. T to Cassidy Decl. (docket no. 34-20), who were identified as "preparers" in one or more of the following four NEPA documents:

- Northwest Training Range Complex Final EIS/OEIS (September 2010)
- Pacific Northwest Electronic Warfare Range Final Environmental Assessment (September 2014)
- NWTT Final EIS/OEIS (October 2015)
- NWTT Draft Supplemental EIS/OEIS (March 2019)

Plaintiff's list of "preparers" includes the three custodians for whom the Navy has provided names, <u>i.e.</u>, Kimberly Kler, John Mosher, and Jacqueline Queen, who were the project managers primarily responsible for the NEPA documents at issue.  <u>See</u> Byrnes Decl. at ¶ 22 (docket no. 28).

As explained by the Navy, however, the list of custodians who might have documents responsive to the 2016 FOIA Request and the 2018 FOIA Request is not coextensive with plaintiff's longer list of NEPA "preparers" because the NEPA documents have a geographic scope beyond just the Olympic Peninsula.  <u>See</u> Byrnes Decl. at ¶ 7 (docket no. 44).  The NEPA documents relate to the Northwest Training and Testing Study Area, which includes land, air, and sea regions throughout the Pacific Northwest and southeastern Alaska.  <u>Id.</u> at ¶ 7 & Ex. 1 (Fig. 1.1-1).  The Navy's decision to exclude certain NEPA "preparers" as custodians because they are unlikely to possess

relevant documents is supported by the job descriptions on plaintiff's list, which indicate

that the areas of responsibility for at least thirteen individuals are or might likely be

outside the Olympic Peninsula, for example, southeast Alaska (1), undersea warfare (5),

naval sea systems (2), and space and naval warfare (5).  *See* Ex. T to Cassidy Decl.

(docket no. 34-20).

  The Navy has represented that *all* Navy personnel, as well as a Navy contractor,

with primary responsibility for the Navy's activities on or around the Olympic Peninsula

were treated as custodians.  *See* Byrnes Decl. at ¶ 8 (docket no. 44).  Consistent with the

list of "preparers" offered by plaintiff, the 27 custodians selected by the Navy included

"program managers, project managers, environmental planners, biologists, range

coordinators, and attorneys that were involved with the portions of the [four NEPA

documents] related to the Navy's training activities on or around the Olympic Peninsula,"

as well as "Navy personnel involved with the Navy's training and readiness requirements

for the Pacific Northwest and the Navy's training activities within the Olympic Military

Operations Areas."  *Id.*  Among the Navy's custodians were personnel at Naval Air

Station, Whidbey Island, which is the base of operations for the aircraft known as the

Growler.  *Id.*  The various custodians searched "all locations likely to contain relevant

documents."  *Id.* at ¶ 13.

  The Court finds that the Navy's search for documents responsive to the 2016

FOIA Request and the 2018 FOIA Request was "reasonably calculated" to reveal

relevant materials.  *See Weisberg*, 705 F.2d at 1351.  Plaintiff's suggestion that additional

custodians might have responsive documents is not supported by the voluminous record.

1   Plaintiff's separate argument, in its motion for summary judgment, that the Navy's failure

2   to produce certain materials establishes that its search was inadequate runs contrary to

3   FOIA jurisprudence, which directs the Court to evaluate the appropriateness of the

4   government's search methodology, not the fruits of its search efforts.  *See Zaldivar v.*

5   *U.S. Dep't of Veterans Affairs*, 2016 WL 4429657 at *3 (D. Ariz. Aug. 22, 2016), *aff'd*,

6   695 F. App'x 319 (9th Cir. 2017); *see also Iturralde v. Comptroller of Currency*, 315

7   F.3d 311, 315 (D.C. Cir. 2003).  The Court concludes that no genuine dispute of material

8   fact exists and the Navy is entitled to judgment as a matter of law as to the adequacy of

9   its search.

10  **C.**    **Exemptions Invoked by the Navy**

11         Of the nine exemptions enumerated in FOIA, only three are at issue in this

12  matter,[4] namely Exemption 3 for materials "specifically exempted from disclosure by

13  statute," Exemption 5 for "inter-agency or intra-agency memorandums or letters that

14  would not be available by law to a party . . . in litigation with the agency," and

15  Exemption 6 for "personnel and medical files and similar files the disclosure of which

16  would constitute a clearly unwarranted invasion of personal privacy."  *See* 5 U.S.C.

17  §§ 552(b)(3), (5), & (6).  Plaintiff argues that the Navy has invoked these exemptions too

18

19

_____

20  [4] At least one document, the Fleet Replacement Squadron class syllabus sought in the May 2019 NEPA/FOIA Request, *see* Ex. M to Smith Decl. (docket no. 33-13 at 3), was originally treated as classified and therefore exempt from disclosure pursuant to 5 U.S.C. § 552(b)(1).  The Navy

21  later concluded that, although related materials are classified, the syllabus itself is not classified, and the syllabus has been produced to plaintiff.  *See* Quay Decl. at ¶ 20 (docket no. 45); Pla.'s

22  Praecipe at 1 (docket no. 48) (indicating that the syllabus was provided on June 20, 2020).  Thus, the Court need not address the merits of the Navy's invocation of FOIA Exemption 1.

23

1   broadly or without providing sufficient justification, and it asks that the Court direct the

2   Navy to produce in unredacted form all records listed on the four Vaughn Indices.  The

3   Navy seeks summary judgment that no further disclosures are required.

4          1.     **Exemption 3:  Materials Exempted from Disclosure By Statute**

5          The Navy has refused to produce 46 documents on the basis of Exemption 3,

6   citing 10 U.S.C. § 130e.  As indicated earlier, of these 46 documents, 37 are responsive to

7   2018 FOIA Request and nine (9) relate to the May 2019 NEPA/FOIA Request.  Byrnes

8   Decl. at ¶¶ 46 & 48 (docket no. 28).  The statute at issue indicates that the Secretary of

9   Defense may exempt from disclosure under FOIA "Department of Defense critical

10  infrastructure security information," or "DCRIT," which is defined as "sensitive but

11  unclassified information that, if disclosed, would reveal vulnerabilities in Department of

12  Defense critical infrastructure that, if exploited, would likely result in the significant

13  disruption, destruction, or damage of or to Department of Defense operations, properties,

14  or facilities."  _See_ 10 U.S.C. §§ 130e(a)&(f).  Section 130e requires the Secretary of

15  Defense to make a written determination that the records at issue constitute DCRIT and

16  that the public interest in their disclosure is outweighed by the prevention of their

17  dissemination.  _Id._ at § 130e(a).  The decision of whether to assert Exemption 3 with

18  respect to materials that are potentially DCRIT has been delegated to and must be made

19  by the Office of the Secretary of Defense, Director of Administration.  _See_ Byrnes Decl.

20  at ¶ 47 (docket no. 28).

21         The Navy withheld the 46 documents at issue while awaiting a determination from

22  the Director of Administration.  As of June 2020, when the parties completed their

23

briefing in this matter, no decision had been made, and no update has since been provided

to the Court.  On or before December 4, 2020, the parties shall file a Joint Status Report

indicating:

> (A)    whether the Director of Administration has announced a decision
>         concerning the 46 records at issue;
>
>> (1)    if not, when is a determination is expected; or
>>
>> (2)    if so, whether the Director of Administration has designated
>>        the materials as DCRIT; and
>>
>>> (a)    if not, whether the Navy will produce or has produced
>>>        the documents; or
>>>
>>> (b)    if so, what further remedy, if any, can the Court
>>>        provide given that the Secretary of Defense is not a
>>>        party to this action; and
>
> (B)    whether the portion of this litigation involving DCRIT or potentially
>        DCRIT materials may be dismissed as either moot or beyond the
>        scope of the Court's jurisdiction.

With respect to the Navy's invocation of Exemption 3, the parties' cross-motions for

summary judgment are DEFERRED.

### 2.    <u>Exemption 5:  Work Product or Privileged Materials</u>

Exemption 5 encompasses records that are normally privileged in the context of

civil discovery, including materials that are protected by the work-product doctrine, the

attorney-client privilege, and the deliberative-process privilege.  *ACLU*, 880 F.3d at 483.

Exemption 5 ensures that a litigant against the government cannot obtain via FOIA what

it may not acquire through the process of discovery in a civil proceeding.  *See Maricopa*

*Audubon Soc'y ("Audubon") v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997);

*see also United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799-802 (1984).  With

respect to three of the four FOIA requests at issue, the Navy has redacted or withheld the

following numbers of documents pursuant to 5 U.S.C. § 552(b)(5):

|                    | Redacted   | Withheld      |
|--------------------|------------|---------------|
| 2016 FOIA Request: | 69 records | 119 records   |
| 2018 FOIA Request: | 24 records | 230 records   |
| 2019 EPA Referral: | N/A        | 6 records.    |

See Ex. O to Byrnes Decl. (docket no. 28-15) (Vaughn Index re: 2016 FOIA Request);

Ex. P to Byrnes Decl. (docket no. 28-16) (Vaughn Index re: 2018 FOIA Request); Ex. V

to Quay Decl. (docket no. 30-6) (Vaugh Index re: 2019 EPA Referral).  No materials

responsive to the May 2019 NEPA/FOIA Request were withheld on the basis of

Exemption 5.  See Ex. Y to Quay Decl. (docket no. 30-8).  The Navy has invoked the

work-product doctrine as to some of the withheld documents, and the attorney-client

privilege and/or deliberative-process privilege with respect to the remaining materials.

### a.    Work Product

Documents qualify for work-product protection if they were prepared (i) in

anticipation of litigation or for trial (ii) by or for a party or its representative.  _ACLU_,

880 F.3d at 484.  Work product includes the mental impressions, conclusions, opinions,

or legal theories of an attorney, as well as factual materials prepared in anticipation of

litigation.  _Hunton_, 248 F. Supp. 3d at 251.  A document may be protected by the work-

product doctrine even though it was not prepared exclusively for litigation if it served

dual purposes, one of which related to the prospect of litigation.  _ACLU_, 880 F.3d at 485-

86.  As observed by the Ninth Circuit, agency attorneys "anticipating potentially

recurring legal issues must be free to 'work with a certain degree of privacy, free from

unnecessary intrusion by opposing parties and their counsel.'" *Id.* at 487.  To invoke the

work-product doctrine, an agency must (i) describe the nature and contents of the

withheld document, (ii) identify the document's author, (iii) note the circumstances

surrounding the document's creation, and (iv) indicate the type of litigation for which the

document's use is anticipated or at least foreseeable.  *Hunton*, 248 F. Supp. 3d at 251.

The Navy has withheld, on work-product grounds, one (1) document responsive to

the 2016 FOIA Request and fifteen (15) records sought in the 2018 FOIA Request.  With

respect to these materials, the Navy has provided the associated Bates numbers, dates of

transmittal, and titles or file names, as well as, with one exception, the identities of one or

more attorneys who sent, received, or were copied on the documents:

| Table 1:  Materials Withheld Pursuant to Work-Product Doctrine | | | |
|---|---|---|---|
| **Bates Numbers** | **Date** | **Title or File Name** | **Attorney Involved** |
| NPCA00016170-NPCA00016175 | 8/28/2014 | Legal Sufficiency Memo for Electronic Warfare Range NW Final EA 27 Aug 14 | not disclosed |
| NPCAII00003363-NPCAII00003364 | 1/10/2019 | RE: Draft NWTT LSM | cc'd to: Commander ("CDR") Abby Kagle |
| NPCAII00003365-NPCAII00003382 | 1/10/2019 | NWTT_legal_sufficiency_memo_2018_update_CleanCopy | attachment to email identified above |
| NPCAII00003383-NPCAII00003383 | 1/8/2019 | Draft NWTT Legal Sufficiency Memo | cc'd to: CDR Kagle |
| NPCAII00003384-NPCAII00003401 | 1/8/2019 | NWTT_legal_sufficiency_memo_2018_update_CleanCopy | attachment to email identified above |
| NPCAII00003402-NPCAII00003402 | 1/8/2019 | Draft NWTT Legal Sufficiency Memo | cc'd to: CDR Kagle |
| NPCAII00003403-NPCAII00003420 | 1/8/2019 | NWTT_legal_sufficiency_memo_2018_update_CleanCopy | attachment to email identified above |
| NPCAII00003450-NPCAII00003450 | 12/31/2018 | Legal Sufficiency Memo for NWTT DSIES/OEIS (attorney/client priv) | sent to: CDR Kagle; cc: Edward J. Balsamo |
| NPCAII00003451-NPCAII00003468 | 12/31/2018 | NWTT SEIS Legal Sufficiency Memo | attachment to email identified above |
| NPCAII00003469-NPCAII00003469 | 1/4/2019 | NWTT Legal Sufficiency Memo | from: CDR Kagle |

| Table 1: continued | | | |
|---|---|---|---|
| **Bates Numbers** | **Date** | **Title or File Name** | **Attorney Involved** |
| NPCAII00003470-NPCAII00003487 | 1/4/2019 | NWTT Legal Sufficiency Memo | attachment to email identified above |
| NPCAII00003488-NPCAII00003489 | 1/8/2019 | RE: NWTT Legal Sufficiency Memo - With Suggested Edits | sent to: CDR Kagle |
| NPCAII00003490-NPCAII00003507 | 1/8/2019 | NWTT Legal Sufficiency Memo | attachment to email identified above |
| NPCAII00003508-NPCAII00003525 | 1/8/2019 | NWTT SEIS Legal Sufficiency Memo | attachment to email identified above |
| NPCAII00003526-NPCAII00003528 | 1/29/2019 | RE: NWTT Legal Sufficiency Memo | sent to: CDR Kagle |
| NPCAII00003529-NPCAII00003545 | 1/29/2019 | NWTT SEIS Legal Sufficiency Memo | attachment to email identified above |

_See_ Exs. O & P to Byrnes Decl. (docket nos. 28-15 & 28-16).

The Navy has explained that all of the records on Table 1 are either legal sufficiency memoranda prepared by Navy attorneys in anticipation of litigation, which analyze the litigation risks related to the underlying documents that are the subject of the memoranda, or emails among Navy attorneys concerning and/or transmitting the legal sufficiency memoranda. _See_ Byrnes Decl. at ¶¶ 44-45 (docket no. 28).  The first document on Table 1 was generated shortly before issuance of the Pacific Northwest Electronic Warfare Range Final Environmental Assessment in September 2014, and the remaining materials were created in connection with the Northwest Training and Testing Supplemental EIS/OEIS, the publicly available draft of which was issued in March 2019, and the final version of which was published in September 2020, _see_ Notice (docket no. 49).  The Court concludes that the Navy has met its burden of describing with sufficient specificity the "logical" grounds for asserting the work-product doctrine, _see_ _Wolf_, 473 F.3d at 374-75, and the Navy is entitled to summary judgment that, pursuant to FOIA Exemption 5, the records listed on Table 1 need not be disclosed.

1

### b.   <u>Attorney-Client Privilege</u>

2       The attorney-client privilege shields from disclosure confidential communications

3 by clients to their attorneys made for the purpose of securing legal advice or services, as

4 well as communications by attorneys to their clients if they "rest on confidential

5 information obtained from the client[s]." <u>Hunton</u>, 248 F. Supp. 3d at 253.  For purposes

6 of this privilege, a governmental agency may be a "client" and an agency lawyer may be

7 the "attorney."  <u>Id.</u>  To carry its burden of establishing the privilege, the Navy must show:

8 (i) it is a "client" for purposes of claiming the privilege; (ii) one of the individuals

9 involved in the communication at issue is a member of the bar acting, with respect to the

10 communication, in the capacity of a lawyer; and (iii) the communication relates to

11 information provided outside the presence of strangers for purposes of securing legal

12 advice.  <u>See</u> <u>id.</u>

13       The Navy has invoked the attorney-client privilege with respect to the following

14 numbers of documents:

15

|                    | <u>Redacted</u>   | <u>Withheld</u>   |
|--------------------|-------------------|-------------------|
| 2016 FOIA Request: | 39 records        | 32 records        |
| 2018 FOIA Request: | 11 records        | 63 records.       |

16

17

<u>See</u> Exs. O & P to Byrnes Decl. (docket nos. 28-15 & 28-16).  With respect to these

18 documents, the Navy has indicated in the two related Vaughn Indices that the redacted or

19 withheld materials reflect one of the following protected categories of information:

20 (i) "Navy attorneys [sic] input on the draft document," (ii) "Navy staff communications

21 with attorneys," or (iii) "attorney guidance [or advice] to Navy staff."  <u>See</u> <u>id.</u>  The Navy,

22 however, has offered almost no data to support these representations, generally failing to

23

ORDER - 18

1  identify the lawyers involved or describe the circumstances that would indicate the

2  communications were confidential.  None of the many declarations submitted by the

3  Navy even contain the phrase "attorney-client privilege."  *See* Byrnes Decl. (docket

4  no. 28); Byrnes Decl. (docket no. 29); Quay Decl. (docket no. 30); Mosher Decl. (docket

5  no. 31); Mosher Decl. (docket no. 37); Quay Decl. (docket no. 38); Byrnes Decl. (docket

6  no. 44); Quay Decl. (docket no. 45).  In apparent recognition of the inadequacy of its

7  showing, the Navy has requested that it be allowed to supplement its arguments and/or

8  Vaughn Indices on the subject of "attorney work product," including the Navy's assertion

9  of the attorney-client privilege.  *See* Navy's Resp. at 20 (docket no. 36).

10        Given the current record, the Court cannot determine, as a matter of law, whether

11  the Navy has appropriately invoked attorney-client privilege.  With respect to redacted

12  materials (a total of 50 records), the Court will permit the Navy to supplement its Vaughn

13  Indices and provide an additional declaration to support the redactions at issue.  The

14  revised Vaughn Indices should be filed in CM/ECF and sent, in a searchable and sortable

15  format, as an attachment to an email addressed to ZillyOrders@wawd.uscourts.gov,

16  which shall be cc'd to opposing counsel.  These submissions are due by December 4,

17  2020.  On or before December 28, 2020, plaintiff may file a supplemental response, not

18  to exceed twelve (12) pages in length.  On or before January 8, 2021, the Navy may file a

19  supplemental reply, not to exceed six (6) pages in length.

20        With regard to the 95 documents withheld in their entirety on the basis of attorney-

21  client privilege, the Court observes that the Navy also designated these materials as

22  exempt from disclosure pursuant to the deliberative-process privilege.  In light of the

23

ORDER - 19

1   Court's rulings, set forth in the next section, that these records are protected by the

2   deliberative-process privilege, the Court need not address the Navy's separate assertion

3   of attorney-client privilege.

4              **c.**    **Deliberative-Process Privilege**

5           The deliberative-process privilege protects the internal decision-making methods

6   of federal agencies and shields from public view all documents reflecting "advisory

7   opinions, recommendations and deliberations comprising part of a process by which

8   governmental decisions and policies are formulated." _ACLU_, 880 F.3d at 490 (quoting

9   _NLRB v. Sears, Roebuck & Co._, 421 U.S. 132, 150 (1975)).  The purpose of the

10  deliberative-process privilege is to avoid injury to the quality of agency decisions by

11  encouraging "frank discussion of legal or policy matters" without fear of public

12  dissemination.  _See Sears_, 421 U.S. at 150-51.  The privilege focuses on the inhibiting

13  effect of forcing agencies to disclose pre-decisional communications, which might reduce

14  the candor of agency personnel and produce ill-informed and poorer results.  _Id._; _see also_

15  _Assembly of Cal. v. U.S. Dep't of Commerce_, 968 F.2d 916, 920 (9th Cir. 1992) (the

16  privilege "allow[s] agencies freely to explore possibilities, engage in internal debates, or

17  play devil's advocate without fear of public scrutiny," and it addresses the concern that,

18  "if agencies were forced to 'operate in a fishbowl,' [the] candid exchange of ideas . . .

19  would cease and the quality of decisions would suffer" (citation omitted)); _City of W._

20  _Chicago v. U.S. Nuclear Regulatory Comm'n_, 547 F. Supp. 740, 747 (N.D. Ill. 1982)

21  ("Creative or unorthodox ideas that might have been put forward in draft versions of

22

23

1  documents could be stifled if their authors knew that the documents would be subject to

2  public view.").

3      In contrast, the privilege does not protect communications made after a decision

4  has been reached, which are generally designed to explain the agency's actions, and

5  which do not threaten the deliberative process if disclosed.  _Sears_, 421 U.S. at 151-52;

6  _see Assembly of Cal._, 968 F.2d at 920 ("documents deemed 'postdecisional' do not enjoy

7  the protection of the deliberative process privilege").  Indeed, to the extent that the

8  agency provides reasons for adopting a particular policy, such statements are considered

9  "working law" of the agency and may not be withheld in response to a FOIA request on

10  the basis of Exemption 5.  _Sears_, 421 U.S. at 152-53; _see ACLU_, 880 F.3d at 490 (the

11  "working law exception places a boundary on the deliberative process privilege").

12      To fall within the bounds of the deliberative-process privilege, the documents at

13  issue must be both (i) pre-decisional in nature, and (ii) part of the agency's deliberative

14  process.  _Audubon_, 108 F.3d at 1093.  A record is pre-decisional if it was prepared to

15  "assist an agency decisionmaker in arriving at [a] decision."  _Id._ (quoting _Assembly of_

16  _Cal._, 968 F.2d at 920 (adopting the definition set forth in _Formaldehyde Inst. v. Dep't of_

17  _Health & Human Servs._, 889 F.2d 1118, 1122 (D.C. Cir. 1989))).  Pre-decisional

18  materials include "recommendations, draft documents, proposals, suggestions, and other

19  subjective documents" that reflect "the personal opinions of the writer rather than the

20  policy of the agency."  _Id._  A document is part of the agency's deliberative process if its

21  disclosure would expose an agency's decision-making process in "such a way as to

22  discourage candid discussion within the agency and thereby undermine the agency's

23

1    ability to perform its functions." *Id.*; *see Hunton*, 248 F. Supp. 3d at 240 (the materials

2    must reflect "the give-and-take of the consultative process").  To justify the assertion of

3    the deliberative-process privilege, an agency must provide the following information:

4    (i) the nature of the specific deliberative process involved; (ii) the function and

5    significance of the document in that process; and (iii) the nature of the decision-making

6    authorities vested in the document's author and its recipient.  *Hunton*, 248 F. Supp. 3d at

7    241.

8         The Navy has invoked the deliberative-process privilege with respect to the

9    following numbers of documents:

10                                          **Redacted**          **Withheld**

11        2016 FOIA Request:       54 records        118 records

12        2018 FOIA Request:       16 records        215 records

         2019 EPA Referral:        N/A              6 records.

13   *See* Exs. O & P to Byrnes Decl. (docket nos. 28-15 & 28-16); Ex. V to Quay Decl.

14   (docket no. 30-6).  The Navy indicates that these documents either "originated within the

15   agency" (*i.e.*, were authored by Navy employees or contractors) or are "inter-agency

16   communications."  Byrnes Decl. at ¶ 37 (docket no. 28); *see also* Quay Decl. at ¶ 17

17   (docket no. 30).  The Navy contends that the materials are pre-decisional, do not set forth

18   formal or informal Navy policies or decisions (*i.e.*, "working law"), and contain frank

19   communications among or with Navy personnel who are not decisionmakers and on

20   whom the release of these records pursuant to FOIA would have a future chilling effect.

21   Byrnes Decl. at ¶ 37 (docket no. 28); *see also* Quay Decl. at ¶¶ 17-18 (docket no. 30).

22   The Navy also expresses concern that release of these documents in unredacted form

23

ORDER - 22

1   might cause public confusion by disclosing conclusions and reasoning that were not

2   adopted by and do not reflect the views of the Navy or the United States.  Byrnes Decl. at

3   ¶ 37 (docket no. 28); _see also_ Quay Decl. at ¶ 18 (docket no. 30).

4          With respect to each assertion of the deliberative-process privilege, the Vaughn

5   Indices provide a brief recitation of the deliberative process at issue, the relevance of the

6   document within that process, and the role (but generally not the identity) of the

7   document's author and/or recipient(s).  Plaintiff contends that the Vaughn Indices lack

8   sufficient information.  The Court disagrees.  The Vaughn Indices provide enough detail

9   to understand what materials were redacted or not disclosed and why.

10         For example, numerous records that were withheld in their entirety are described

11  as pre-decisional drafts "reflecting the evaluation of information and opinions by Navy

12  staff" relating to the Northwest Training and Testing Draft Supplemental EIS/OEIS.  _See_

13  Ex. P to Byrnes Decl. (docket no. 28-16).  The NWTT Draft Supplemental EIS/OEIS was

14  revised several times before it was disclosed to the public for comment.  _See_ Byrnes

15  Decl. at ¶ 39 (docket no. 28) (indicating that the Cumulative Impacts section alone was

16  the subject of eleven (11) early drafts, and at least fourteen (14) drafts of Appendix J,

17  concerning airspace noise, were generated).  The Navy has explained that, before the

18  release of the NWTT Draft Supplemental EIS/OEIS in March 2019, multiple subject-

19  matter experts for the Navy provided input on early drafts in the nature of comments,

20  analyses, opinions, and projections relating to activities needed for the Navy to maintain

21  military readiness beyond 2020 and into the reasonably foreseeable future.  _Id._ at ¶ 38.

22  As reflected by this sampling, the Vaughn Indices sufficiently explain the nature of the

23

1   materials redacted or withheld pursuant to the deliberative-process privilege.  Thus, to the

2   extent that plaintiff's motion to compel the Navy to disclose pre-decisional materials is

3   based solely on the alleged deficiency of the Vaughn Indices, *see* Pla.'s Mot. at 21-24

4   (docket no. 32), it is DENIED.

5          Plaintiff has also challenged the Navy's invocation of the deliberative-process

6   privilege in three substantive areas:  (i) purely factual information; (ii) comments from

7   other agencies or the public; and (iii) communications with contractors.  Plaintiff's

8   arguments lack merit.

9                          **i.      Purely Factual Information**

10         Plaintiff contends that the factual information contained in the records withheld by

11  the Navy is not protected, and that the Navy must show that the documents cannot be

12  reasonably segregated and produced in redacted form.  The deliberative-process privilege

13  does not shield from disclosure purely factual materials because agencies have "no

14  legitimate interest in keeping the public ignorant of the facts" from which they worked.

15  *See* *Assembly of Cal.*, 968 F.2d at 921.  FOIA Exemption 5 cannot be used to "spare

16  agencies the embarrassment of being exposed as having gotten their facts wrong."  *See*

17  *City of W. Chicago*, 547 F. Supp. at 748.  The Supreme Court, however, has warned

18  against drawing "wooden" distinctions between "factual" and "deliberative" records, and

19  has instead encouraged application of the "same flexible, common-sense approach that

20  has long governed" discovery disputes in civil litigation.  *See* *EPA v. Mink*, 410 U.S. 73,

21  91 (1973).  The Court's inquiry is whether the information at issue reveals the agency's

22  deliberative process.  *Assembly of Cal.*, 968 F.2d at 921.

23

ORDER - 24

Some figures are not purely factual, but rather are derived "from a complex set of judgments." *Id.* at 922 (quoting *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)).  For example, cost estimates that require a comparison of competing bids, or budgets that take into account projected needs, prior endeavors, and probable suppliers, involve the type of "elasticity that has persuaded courts to provide shelter for opinions generally." *See Quarles*, 893 F.2d at 392-93.  In addition, summaries of historical information are not purely factual because the process of summarization is itself deliberative. *City of W. Chicago*, 547 F. Supp. at 749 (citing *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 85 (2d Cir. 1979) (observing that a summary indicates "which facts in the massive rule-making record were considered significant by the decisionmaker and those assisting her")).  Similarly, factual recitations that appeared in a draft, but were deleted from the final version of a published document, are deliberative because their omission reveals that the agency decided not to rely on those facts or related analysis after having been invited to do so. *See Lead Indus.*, 610 F.2d at 86.  On the other hand, if the same data set forth in a draft is contained in the record made publicly available, then FOIA does not require further disclosure. *Id.*

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  In the context of factual information, the Court is tasked with determining whether the proportion of nonexempt material is "relatively small" and "so interspersed with exempt material that separation by the agency and policing" by the Court would "impose an inordinate burden." *See Lead Indus.*, 610 F.2d at 86.  If so, then

1  the entire record is rendered exempt because it is not "reasonably segregable" within the

2  meaning of § 552(b).  *Id.*

3       Plaintiff has submitted two lists of redacted or withheld documents that it believes

4  contain factual information, and it asks the Court to review these 101 records *in camera*.

5  *See* Ex. JJ to Staric Decl. (docket no. 35-36) (47 records); Ex. K to Staric Decl. (docket

6  no. 40-10) (54 records).  These materials include (i) comments by Navy staff about a

7  draft of the Pacific Northwest Electronic Warfare Range Environmental Assessment,[5]

8  (ii) figures or descriptions of transit routes, (iii) noise analysis, (iv) emails among Navy

9  staff concerning the Olympic Military Operations Areas noise study task, (v) data and/or

10  spreadsheets, (vi) drafts of Appendix J to the NWTT Draft Supplemental EIS/OEIS, and

11  (vii) drafts of responses to inquiries from U.S Representative Derek Kilmer.[6]  *See id.*; *see*

12  *also* Exs. O & P to Byrnes Decl. (docket nos. 28-15 & 28-16).

13       The Court DENIES plaintiff's motion to require the Navy to produce these

14  materials for *in camera* review.  Comments on draft documents and emails among

15

16  [5] Plaintiff has characterized this document, Bates Nos. NCPA00016525–38, as a "[c]omment
17  relating to noise."  *See* Ex. JJ to Staric Decl. (docket no. 35-36 at 2).  The filename of the record
   is "EW_EA_3.3_Noise_30_April_2013_comments20130430," and the document is described as
18  a "pre-decisional draft reflecting the evaluation of information and opinions by Navy staff in
   preparing the NWTT Draft EA for the EW Range."  *See* Ex. O to Byrnes Decl. (docket no. 28-15
19  at 50).  To the extent that plaintiff believes the document contains comments from one or more
   members of the public about noise, plaintiff appears to be mistaken.

20  [6] Plaintiff has requested *in camera* review of a forwarded email, Bates Nos. NPCAII00002466–
   2466_0003, summarizing a call with Washington Governor Jay Inslee, and of a document titled
21  "Frink-Comment," Bates Nos. NPCA00016314–73.  *See* Ex. K to Staric Decl. (docket no. 40-10
   at 3); *see also* Ex. P to Byrnes Decl. (docket no. 28-16 at 15); Ex. O to Byrnes Decl. (docket
22  no. 28-15 at 46).  These records were either withheld or redacted under Exemption 6, not
   Exemption 5, and they are addressed in the next section.

23

1    Navy staff discussing the tasks they are planning or coordinating are quintessentially

2    "deliberative" and need not be disclosed.  Similarly, figures, descriptions, noise analysis,

3    data, and spreadsheets that were circulated internally in connection with the preparation

4    of NEPA documents, but differ from the information included in the publicly-released

5    versions of those materials, qualify as "deliberative."  *Lead Indus.*, 610 F.2d at 86.  To

6    the extent, however, that the "draft" figures, descriptions, noise analysis, data, and

7    spreadsheets appear in the "final" records issued pursuant to NEPA, they are merely

8    duplicative and their production is not dictated by FOIA.  *Id.*

9          As observed in *Lead Indus.*, the legislative history of FOIA neither requires nor

10   authorizes the Court to "undertake a line-by-line analysis of agency records" to determine

11   whether "some bits of non-exempt material may be found among exempt material,"

12   unless the agency's assertion of the deliberative-process privilege is facially vague, too

13   sweeping, or suggestive of bad faith.  *Id.* at 88 (quoting *Weissman v. CIA*, 565 F.2d 692,

14   697-98 (D.C. Cir. 1977)).  The burdensome task of *in camera* review is not undertaken

15   lightly because it is "conducted without the benefit of an adversary proceeding," which

16   might create "suspicions of unfairness," *see Weissman*, 565 F.2d at 697, and it often

17   requires the aid of individuals, perhaps designated as special masters, with expertise in

18   the pertinent fields of study, *see Lead Indus.*, 610 F.2d at 88.  Given the Navy's detailed

19   Vaughn Indices, supporting the conclusion that the records listed by plaintiff are entirely

20   "deliberative," not "reasonably segregable," and/or duplicative of documents already

21   made available to the public, the Court concludes that *in camera* review is not

22   appropriate.

23

ORDER - 27

1

**ii.    Comments from Other Agencies or the Public[7]**

2
The parties disagree over whether a regulation, namely 40 C.F.R. § 1506.6(f),

3
promulgated by the Council on Environmental Quality ("CEQ") pursuant to its authority

4
under NEPA, overrides the protections set forth in Exemption 5.  As originally adopted in

5
1978, the CEQ regulation read:

6
> Agencies shall . . . make environmental impact statements, the comments
7
> received, and any underlying documents available to the public pursuant to
> the provisions of [FOIA], without regard to the exclusion for interagency
> memoranda where such memoranda transmit comments of Federal agencies
8
> on the environmental impact of the proposed action.  Materials to be made
> available to the public shall be provided to the public without charge to the
9
> extent practicable, or at a fee which is not more than the actual costs of
> reproducing copies required to be sent to other Federal agencies, including
10
> the Council.

11
_See_ 43 Fed. Reg. 55,978, 56,001 (Nov. 29, 1978).  Effective September 14, 2020, the

12
regulation was amended to provide:

13
> Agencies shall . . . [m]ake environmental impact statements, the comments
> received, and any underlying documents available to the public pursuant to
14
> the provisions of the Freedom of Information Act, as amended.

15
40 C.F.R. § 1506.6(f); _see_ 85 Fed. Reg. 43,304, 43,371 (July 16, 2020).  The final rule

16
was published in the Federal Register after the parties completed briefing on the pending

17
cross-motions for summary judgment.  _See_ 85 Fed. Reg. at 43,304.

18
---

19
[7] In its motion for summary judgment, plaintiff challenged the Navy's withholding of comments
received from the public during the "scoping" period.  Pla.'s Mot. at 13 & n.5 (docket no. 32).
20
In its response, the Navy indicated that it would review the 200 pages of scoping comments
listed on the Vaughn Index for the 2018 FOIA Request.  _See_ Navy's Resp. at 21 n.8 (docket
21
no. 36).  In its subsequent reply in support of its own motion for summary judgment, the Navy
represented that, upon further consideration, it would produce "responsive, segregable comments
from the public for the purposes of this litigation."  _See_ Navy's Reply at 6 n.2 (docket no. 43).
22
On July 6, 2020, plaintiff acknowledged receipt of the promised scoping comments.  _See_ Pla.'s
Praecipe (docket no. 48).  This issue is therefore moot, and the Court will not further address it.

23

ORDER - 28

1    In challenging the Navy's assertion of the deliberative-process privilege, plaintiff

2  relied on the wording of the former CEQ regulation, citing *Information Network for*

3  *Responsible Mining ("INFORM") v. Bureau of Land Mgmt.*, 611 F. Supp. 2d 1178

4  (D. Colo. 2009), for support.  Neither *INFORM* nor the prior version of § 1506.6(f)

5  supports plaintiff's view,[8] and the intervening deletion of the language on which plaintiff

6  based its argument renders plaintiff's position meritless.  The recent amendment to

7  § 1506.6(f) was aimed at simplifying the paragraph to "make EISs, comments and

8  underlying documents available to the public consistent with" FOIA, which has been

9  amended "numerous times since the enactment of NEPA."  85 Fed. Reg. at 43,338.  The

10  removal of the proviso regarding inter-agency memoranda clarifies that the CEQ

11  regulation is not attempting "an implausible repeal" of "a broad federal statute" or the

12  exemptions expressly enumerated by Congress.  *See* *City of W. Chicago*, 547 F. Supp. at

13  745.  Plaintiff's reliance on § 1506.6(f) to obtain comments from the EPA, National Park

14  Service, and/or U.S. Forest Service[9] on unpublished drafts is misplaced, and the Navy is

15

---

16  [8] In *INFORM*, the document redacted by the agency was a draft environmental analysis, which is
17  distinct from and serves a different purpose than an EIS, and thus, the former text of the CEQ
   regulation, which applied only to an EIS, had no relevance.  611 F. Supp. 2d at 1187.  Even in
   the context of an EIS, however, the previous CEQ regulation did not extend to inter-agency
18  comments on *unpublished* drafts.  *See* *City of W. Chicago*, 547 F. Supp. at 745-46.

19  [9] Plaintiff accuses the Navy of redacting or withholding "several" documents regarding the
   Navy's application to the U.S. Forest Service for a Special Use Permit, but the only record listed
20  on a Vaughn Index is NPCA00016332–404, titled "Navy-Response-Comments-18Dec15," and
   described as a "pre-decisional draft reflecting the evaluation of information and opinions by
21  Navy staff and USFS staff related to the Navy's permit application for the EW Range."  *See*
   Ex. O to Byrnes Decl. (docket no. 28-15 at 47).  Whether this document contains any comments
22  by the U.S. Forest Service on the permit application at issue, or merely sets forth the perceptions
   of Navy staff and proposed responses to feedback from the U.S. Forest Service, is unclear.  In
23  either event, *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), to

ORDER - 29

1    entitled to summary judgment that these inter-agency memoranda are exempt from

2    disclosure under FOIA.

3                        iii.    **Communications with Contractors**

4            In arguing that the Navy may not assert Exemption 5 with respect to its

5    communications with contractors, plaintiff relies on a Ninth Circuit decision that it

6    acknowledges has no precedential effect because the matter was reheard en banc on

7    September 22, 2020.  *See* Pla.'s Resp. at 23 (docket no. 39) (citing *Rojas v. FAA*, 927

8    F.3d 1046 (9th Cir. 2019), *reh'g en banc granted*, 948 F.3d 952 (9th Cir. 2020)).  Not

9    only was the panel's decision withdrawn, it was characterized by the dissenting judge as

10   "upend[ing] basic discovery rules," "disregard[ing] the careful balance Congress struck"

11   when enacting FOIA, and running contrary to the decisions of the First, Second, Fourth,

12   Fifth, Eighth, Tenth, and District of Columbia Circuits.  *See Rojas*, 927 F.3d at 1060

13   (Christen, C.J., concurring in part and dissenting in part).  The types of communications

14   occurring between the Navy and its contractors in this matter, *see* Quay Decl. at ¶ 18

15   (docket no. 45), are the equivalent of intra-agency discussions, and they are protected

16   from disclosure by FOIA Exemption 5.

17   _____

18   which plaintiff cites, does not stand for the proposition that Exemption 5 is inapplicable to the
     Navy's draft.  In *Klamath Water Users*, the documents sought under FOIA had passed between
19   the Department of the Interior and certain Indian Tribes.  *Id.* at 4.  The Supreme Court concluded
     that the materials did not qualify as inter-agency or intra-agency communications because the
20   Indian Tribes were not agencies of the United States, *id.* at 9 (citing 5 U.S.C. § 552(f) (defining
     "agency")) and had not been acting in a consultative capacity for the Department of the Interior
21   ("DOI"), but rather were advocates before DOI's Bureau of Reclamation, legitimately advancing
     their own interests "at the expense of others seeking benefits inadequate to satisfy everyone," *id.*
22   at 9-12.  In contrast, in this matter, the record at issue is comprised of an agency's own writings,
     concerning comments or responses to comments of another agency, and whether the Navy might
23   be competing with others for the permit at issue has no relevance.

ORDER - 30

1       3.     __Exemption 6:  Personal Privacy__

2              Plaintiff contends that the Navy has invoked Exemption 6 inappropriately in two

3       ways:  (i) refusing to identify by name each of the 27 custodians whose materials were

4       searched for records responsive to the 2016 FOIA Request and the 2018 FOIA Request;

5       and (ii) redacting the names and email addresses of Navy personnel and contractors from

6       both the various Vaughn Indices and the voluminous documents produced in redacted

7       form.  Exemption 6 protects "personnel and medical files _and similar files_ the disclosure

8       of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C.

9       § 552(b)(6) (emphasis added).  Although the information at issue is not from personnel or

10      medical files, the Supreme Court has construed "similar files" broadly to mean agency

11      records containing information that "can be identified as applying to [an] individual."

12      _See_ _U.S. Dep't of State v. Wash. Post Co._, 456 U.S. 595, 602 (1982).

13             Exemption 6 is different from most of the other FOIA exemptions because it

14      requires the Court to do more than determine whether the material at issue fits within a

15      particular category.  The Court must balance conflicting interests, namely the individual

16      interest at stake and the public interest in disclosure, to determine whether production of

17      the requested records would constitute an "unwarranted invasion" of privacy.  _See_ _Lesar_

18      _v. U.S. Dep't of Justice_, 636 F.2d 472, 486 & n.80 (D.C. Cir. 1980); _see also_ _Amnesty_

19      _Int'l USA v. CIA_, 728 F. Supp. 2d 479, 523 (S.D.N.Y. 2010).  Government employees

20      and contractors might not have "as great a claim to privacy as that afforded ordinarily to

21      private citizens," but they do not entirely forego all claims to privacy "in matters related

22      to official business."  _Lesar_, 636 F.2d at 487.  They have an interest in keeping their

23

ORDER - 31

1    names out of the public spotlight, avoiding harassing inquiries for access to sensitive

2    information, and not being subjected to threats or attacks.  *See Hunton*, 248 F. Supp. 3d at

3    257; *Amnesty Int'l*, 728 F. Supp. 2d at 523 (government employees "have privacy

4    interests in the dissemination of their names").  On the other side of the scale, the only

5    relevant public interest in a FOIA disclosure is to "shed light on an agency's performance

6    of its statutory duties" or to otherwise inform citizens about what their government is

7    doing.  *See Amnesty Int'l*, 728 F. Supp. 2d at 523 (quoting *Bibles v. Ore. Natural Desert*

8    *Ass'n*, 519 U.S. 355, 355-56 (1997)).

9          In this case, the questions before the Court are (i) whether that public interest is

10   served by compelled production of the identities of records custodians and junior-ranking

11   Navy personnel who authored, received, or were copied on emails, memoranda, or other

12   materials that have been redacted or withheld, and (ii) whether that public interest

13   outweighs the privacy interests of the individuals involved.  Plaintiff argues that, because

14   NEPA regulations require "preparers" to be listed in an environmental impact statement,

15   Navy staff and contractors cannot claim any privacy interest.  Whether all persons whose

16   names have been redacted qualify, and were disclosed, as "preparers" is unclear.  To the

17   extent, however, that their identities are already known to plaintiff, no purpose would be

18   served by simply naming them again.  Rather, what plaintiff really seeks is information

19   about the role each person played in the crafting of the NEPA documents at issue.  *See*

20   Pla.'s Mot. at 19 (docket no. 32) (indicating that plaintiff wants to "understand each

21   individual's level of involvement" and to "track [their] participation in the preparation of

22

23

1   the EIS throughout the process"); *see also* *id.* at 20 n.10 (asserting that a person's identity

2   correlates with the credibility and materiality of his or her comments).

3       The relevant CEQ (NEPA) regulation, which was recently renumbered and

4   slightly modified, offers a framework for considering plaintiff's FOIA request.  It now

5   reads:

6       The environmental impact statement shall list the names, together with their
        qualifications (expertise, experience, professional disciplines), of the persons
7       who were primarily responsible for preparing the environmental impact
        statement or significant background papers, including basic components of
8       the statement.  Where possible, the environmental impact statement shall
        identify the persons who are responsible for a particular analysis, including
9       analyses in background papers.  Normally the list will not exceed two pages.

10   40 C.F.R. § 1502.18 (effective Sep. 14, 2020).  This version of the regulation governed

11   when the Navy issued the NWTT Final Supplemental EIS/OEIS on September 18, 2020,

12   but its predecessor also required that, "[w]here possible," the various analyses in the EIS

13   be traced to their sources.  *See* 40 C.F.R. § 1502.17 (2019); *see also* 85 Fed. Reg. 43,304,

14   43,332 (July 16, 2020) (indicating that the second sentence was converted to active,

15   rather than passive, voice).

16       The Court has reviewed portions of the NWTT Final Supplemental EIS/OEIS,

17   which is publicly available at https://nwtteis.com/Documents/2020-Northwest-Training-

18   and-Testing-Final-Supplemental-EIS-OEIS/Final-Supplemental-EIS-OEIS, particularly

19   Section 7 (List of Preparers) and Appendices J and K, titled, respectively, "Airspace

20   Noise Analysis for the Olympic Military Operations Area" and "Geographic Mitigation

21   Assessment."  Although the Navy has listed, as it must, all Navy employees and

22   contractors who participated in preparing the NWTT Final Supplemental EIS/OEIS,

23

along with their educational qualifications and years of experience, the Navy has not identified exactly who is responsible for the analyses of most interest to plaintiff, which are set forth in Appendices J and K.

The Navy is DIRECTED to show cause, on or before December 4, 2020, why it should not be required to disclose to plaintiff which Navy personnel and contractors developed Appendices J and K to the NWTT Final Supplemental EIS/OEIS.  The Navy is further DIRECTED to file, on or before December 4, 2020, a declaration describing the content of the following records as to which plaintiff has requested *in camera* review: (i) Bates Nos. NPCAII00002466–2466_0003, summarizing a call with Washington Governor Jay Inslee; and (ii) Bates Nos. NPCA00016314–73, titled "Frink-Comment." *See* Ex. P to Byrnes Decl. (docket no. 28-16 at 15); Ex. O to Byrnes Decl. (docket no. 28-15 at 46).  This declaration shall also explain why these documents cannot be produced in unredacted form.  Plaintiff may include any argument concerning the Navy's submissions, as required in this paragraph, within the twelve-page supplemental response authorized in Section II.C.2.b of this Order (re: Attorney-Client Privilege).  Similarly, the Navy may incorporate any discussion supporting redacting or withholding the materials outlined in this paragraph within the six-page supplemental reply previously allowed.

The pending cross-motions for summary judgment are DEFERRED in part with respect to the subjects set forth in the preceding paragraph.  Otherwise, with regard to Exemption 6, the Navy's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.  Plaintiff may not obtain, by challenging the Navy's assertion of Exemption 6, what it cannot acquire as a result of Exemption 5,

namely the insights into the deliberative process that might flow from knowing exactly

who was corresponding with whom, on what timing, and about which subjects.

Moreover, the public has no interest in knowing the identities of records custodians, other

than the three project managers primarily responsible for the NEPA documents at issue;

those project managers' names appear in the Navy's declarations concerning its search

for responsive materials, as well as throughout the Vaughn Indices.  *See* *Harrison v. Fed.*

*Bureau of Prisons*, 611 F. Supp. 2d 54, 65 (D.D.C. 2009) (deeming "frivolous" a FOIA

plaintiff's accusation that a search was inadequate because the persons conducting the

search were not named).  Finally, the public's interest in learning the identities of Navy

personnel who are not listed as "preparers" in the relevant NEPA documents and who are

not decisionmakers, but whose names (and perhaps email addresses or other contact

information) appear on records responsive to plaintiff's FOIA requests, is outweighed by

those individuals' privacy interests.  *See* *Amnesty Int'l*, 728 F. Supp. 2d at 523-25.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Plaintiff's motion, docket no. 47, to strike portions of defendant's reply,

docket no. 43, as well as the declarations of Bradford B. Byrnes, docket no. 44, and

Commander Erin Quay, docket no. 45, is DENIED.

(2)     The Navy's motion for summary judgment, docket no. 27, is GRANTED in

part and DEFERRED in part.  Plaintiff's motion for summary judgment, docket no. 32, is

DENIED in part, STRICKEN in part as moot, and DEFERRED in part.  The deferred

portions of these motions are RENOTED to January 8, 2021.

(3)     With respect to Exemption 3, on or before December 4, 2020, the parties shall file a Joint Status Report in the form described in Section II.C.1 on Page 14 of this Order.

(4)     With respect to Exemption 5 and the documents redacted pursuant to the attorney-client privilege, on or before December 4, 2020, the Navy shall file revised Vaughn Indices and a supplemental declaration as indicated in Section II.C.2.b on Page 19 of this Order.

(5)     With respect to Exemption 6, on or before December 4, 2020, the Navy shall (i) show cause why it should not be required to disclose to plaintiff which Navy personnel and contractors developed Appendices J and K to the NWTT Final Supplemental EIS/OEIS, and (ii) file a declaration as required in Section II.C.3 on Page 34 of this Order.

(6)     Plaintiff's supplemental response (12 pages or less) is due by December 28, 2020, and the Navy's supplemental reply (six pages or less) is due by January 8, 2021.

(7)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 19th day of November, 2020.

Thomas S. Zilly
United States District Judge

ORDER - 36