UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>U.S. DEPARTMENT OF THE NAVY,<br><br>　　　　　　　Defendant. | C19-645 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on the deferred portions of the parties' cross-motions for summary judgment, docket nos. 27 and 32, and plaintiff National Parks Conservation Association's motion for reconsideration, docket no. 54.  Having allowed the parties to file supplemental materials relating to the deferred portions of the cross-motions for summary judgment, having called for a response to plaintiff's motion for reconsideration, <u>see</u> Minute Order (docket no. 55), and having reviewed all papers filed in support of, and in opposition to, the pending motions, the Court enters the following Order.

**A.     Plaintiff's Motion for Reconsideration**

By Order entered November 20, 2020, docket no. 50, the Court granted in part and deferred in part the motion for summary judgment, docket no. 27, brought by defendant

ORDER - 1

1  United States Department of the Navy ("Navy"), and denied in part, struck in part, and

2  deferred in part the motion for summary judgment, docket no. 32, filed by plaintiff.

3  Plaintiff sought reconsideration of the Court's prior Order with regard to five matters,

4  two of which have been rendered moot.[1]  The Court addresses the other three issues

5  seriatim.

6      **1.**    <u>**Exemption 3**</u>

7      Plaintiff contends that the Court should reconsider its decision to defer ruling on

8  the Navy's invocation of Exemption 3 under the Freedom of Information Act ("FOIA").

9  The Navy has withheld 46 documents while waiting for the Secretary of Defense to make

10 a written determination concerning whether such materials constitute Department of

11 Defense ("DoD") "critical infrastructure security information" or "DCRIT."  <u>See</u> Order at

---

[1] Plaintiff requested rulings concerning records that the Navy had withheld as "non-responsive" and that the Navy had produced in black-and-white, rather than color.  The parties agree that the Navy's production of individual documents in their original form, rather than in combined form (as a single PDF consisting of more than 100 records, with non-responsive materials redacted), resolved their disagreement.  <u>See</u> Navy's Resp. at 6 (docket no. 61); Byrnes Decl. at ¶¶ 11–12 (docket no. 62); <u>see also</u> Pla.'s Reply at 1 (docket no. 65).  The issue of providing color, in addition to black-and-white, copies of materials, if available, did not appear to be in dispute when the Court entered its previous Order, <u>see</u> Navy's Reply at 6 n.2 (docket no. 43), and the Navy has since confirmed that, with four exceptions, available color copies of all documents identified on plaintiff's list, Ex. MM to Staric Decl. (docket no. 35-39), have been produced.  <u>See</u> Navy's Resp. at 5 (docket no. 61); Byrnes Decl. at ¶¶ 13–15 (docket no. 62).  Plaintiff agrees that the color-copy matter is "most[ly]" moot.  Pla.'s Reply at 1 (docket no. 65).  The parties' only remaining point of contention involves four records (namely, Bates Nos. NPCA00014823, NPCA00014892, NPCA00016118, and NCPCAII00002232), which contain information residing in the Performance Data Analysis and Reporting System ("PDARS") maintained by the Federal Aviation Administration ("FAA").  <u>See</u> Byrnes Decl. at ¶ 15 (docket no. 62).  The Navy inadvertently produced black-and-white versions of these documents, and now declines to provide color copies on the ground that the materials are exempt from disclosure under FOIA Exemption 3.  <u>See</u> Navy's Resp. at 5 (docket no. 61) (citing Byrnes Decl. at ¶ 15; Quay Decl. at ¶¶ 7–13 & Ex. 1 (docket nos. 38 & 38-1); Quay Decl. at ¶¶ 13–16 (docket no. 45)).  The parties' arguments relating to Exemption 3 are discussed in Sections A.1 and B.1, <u>infra</u>.

13 (docket no. 50).  The Court directed the parties to file a Joint Status Report concerning whether the Office of the Secretary of Defense, Director of Administration, to whom the Secretary of Defense has delegated the authority to designate materials as DCRIT, has announced a decision concerning the 46 records at issue.  *Id.* at 14.  In their Joint Status Report, docket no. 53, which was filed on December 4, 2020, the parties indicated that no determination had been made, but that an announcement was anticipated in January 2021.  The parties have provided no further information regarding the status of the 46 records at issue.

      Plaintiff's motion for reconsideration, however, relates to a different set of documents, namely 61 that were withheld and 16 that were redacted pursuant to a DCRIT determination made in 2017 with respect to military aircraft flight data, including four PDARS records, *see supra* note 1.  This issue was raised for the first time by plaintiff in its reply, docket no. 42, in support of its motion for summary judgment, and the Navy had no opportunity to articulate its position until it was asked to file a response to plaintiff's motion for reconsideration.  As the Navy has now explained, even if it was not permitted to rely on a previous DCRIT determination, the remedy would not be the compelled disclosure of the documents to plaintiff, but rather allowing the Navy to seek another, essentially redundant, DCRIT determination as to the 77 records at issue.  Plaintiff has provided no basis for the Court to reconsider deferring a ruling on whether the Navy has properly withheld materials under FOIA Exemption 3.  Exemption 3 is further addressed in Section B.1, *infra*.

## 2. <u>**Exemption 6**</u>

In its prior Order, the Court concluded that the Navy properly redacted, pursuant to FOIA Exemption 6, the names and email addresses of Navy personnel and contractors other than (i) the three project managers whose information has already been disclosed, (ii) individuals who developed Appendices J and K to the Northwest Training and Testing ("NWTT") Final Supplemental Environmental Impact Statement/Overseas Environmental Impact Statement ("EIS/OEIS"), and (iii) persons involved with two particular records. <u>See</u> Order at 34–35 (docket no. 50). As to the latter two groups, which are discussed further in Section B.3, *infra*, the parties' cross-motions for summary judgment were deferred. Plaintiff does not challenge the rulings that the Court actually made, but rather assigns error to the Court's silence concerning the Navy's withholding of identifying information for employees of other federal agencies and members of the public. The Navy has explained that it consulted with other agencies and redacted the names of staff-level employees of such agencies for the same reasons it invoked Exemption 6 with respect to its own personnel and contractors.[2] The Navy has agreed, however, to release the identities of federal employees or non-governmental individuals that have already been publicly disclosed. <u>See</u> Navy Resp. at 8 (docket no. 61).[3] Plaintiff

---

[2] Of the federal agencies consulted by the Navy, only the U.S. Environmental Protection Agency indicated that it does not redact employees' names when releasing documents pursuant to FOIA. <u>See</u> Byrnes Decl. at ¶ 6 (docket no. 62).

[3] The Navy does not know whether certain disclosures made by other agencies, including the United States Forest Service, the FAA, the National Park Service, and the United States Fish and Wildlife Service, were inadvertent or deliberate, but the Navy has removed certain redactions to be consistent with information previously released by such agencies. <u>See</u> Byrnes Decl. at ¶ 8 (docket no. 62).

ORDER - 4

continues to be dissatisfied with the Navy's production, citing as an illustrative example, the Navy's redaction of the name of the Mayor of the City of Port Townsend, which was "never private in the first place."  <u>See</u> Pla's Reply at 4 (docket no. 65).  The email at issue leaves intact the position of the sender (Mayor), as well as the date of the correspondence (October 30, 2014), <u>see</u> Ex. E to Buchele Decl. (docket no. 60-5), and thus, plaintiff was provided sufficient information from which it could determine the name of the individual involved.  This example does not undermine the principle pursuant to which the Navy has withheld the identities and email addresses of low-ranking personnel of other agencies, the application of which was approved in the Court's earlier Order.  In light of the Navy's subsequent disclosures, plaintiff's request for reconsideration on the subject is DENIED.

    **3.**    <u>**Claim II**</u>

Plaintiff has asserted a claim under 5 U.S.C. § 552(a)(6)(F), which requires an agency, "[i]n denying a request for records," to "make a reasonable effort to estimate the volume of any requested matter the provision of which is denied."  <u>See</u> Compl. at ¶¶ 68–72 (docket no. 1); Supp. Compl at ¶¶ 95–103 (docket no. 17).  The Court did not address this claim in its previous Order, docket no. 50, but the Court's prior ruling also deferred in part both plaintiff's and the Navy's motions for summary judgment.  In light of the procedural posture of the dispositive motions, plaintiff's motion for reconsideration as to Claim II is premature and therefore denied.  Claim II is addressed in Section B.4, <u>*infra*</u>.

    **4.**    <u>**Conclusion**</u>:  With regard to "non-responsive" records and color copies (other than PDARS records), plaintiff's motion for reconsideration, docket no. 54, is STRICKEN as moot, and the motion is otherwise DENIED.

ORDER - 5

B. **Deferred Portions of Cross-Motions for Summary Judgment**

   1. **Exemption 3**

With regard to the 46 records for which the Navy is awaiting a DCRIT determination, the pending cross-motions for summary judgment are further deferred. As to the 77 records withheld or redacted by the Navy pursuant to the June 30, 2017, DCRIT determination made by then Director of Administration Michael L. Rhodes,[4] the Court tends to agree with the Navy that seeking another DCRIT determination concerning the materials plaintiff seeks is redundant and likely to produce the same result, but the scant caselaw on the subject supports a conclusion that a renewed balancing of the public interest in disclosure against the need for secrecy is required.[5] *See Milner v. U.S. Dep't of Def.*, No. C14-1032, 2015 WL 4404964, at *3 & n.4 (W.D. Wash. July 17, 2015) (citing 10 U.S.C. § 130e). Thus, the Court will permit the Navy to further engage in the process required by § 130e before ruling on the portions of the parties' cross-motions

---

[4] The earlier DCRIT determination exempted from disclosure "[a]ny Department of Defense aircraft flight data information (including surveillance sensor data, geospatial referenced position information, altitude, heading, bearing and identification data) collected and/or stored by U.S. Government surveillance and information technology systems." Ex. 1 to Quay Decl. (docket no. 38-1). This information was found to qualify as DCRIT because it pertains to "the origin, patterns, and trends of the movement of military forces." *Id.* Adversaries with such information could "identify vulnerabilities in the execution of our military forces' training and operational missions" and/or "disrupt or inflict significant destruction or damage to DOD aircraft and personnel." *Id.* The balancing performed in June 2017 led to the conclusion that the risk of harm possibly resulting from the disclosure of aircraft flight and radar track data outweighed the public's minimal interest in such information. *Id.*

[5] In the Joint Status Report filed on December 4, 2020, docket no. 53, the parties suggested that the proper defendants with respect to any challenge to a DCRIT determination would be the Secretary of Defense and/or the DoD. No motion to join has been brought, and the Court makes no ruling at this time concerning whether the Secretary and/or the DoD can or should be added as parties pursuant to Federal Rules of Civil Procedure 19 or 20.

ORDER - 6

relating to FOIA Exemption 3.  The Navy shall file a status report within three (3) months of the date of this Order.

**2.     Exemption 5**

The Navy invoked the attorney-client privilege, pursuant to FOIA Exemption 5, with respect to roughly 50 redacted documents.[6]  At the Navy's request, the Court allowed it to supplement its Vaughn Indices and supporting arguments with respect to these records.  <u>See</u> Order at 19 (docket no. 50).  According to the Navy's supplemental materials, each record at issue consists of an email or string of emails.  Byrnes Decl. at ¶ 7 (docket no. 52).  The redacted portions of these emails were prepared by various Navy Judge Advocates General ("JAGs"), who are licensed attorneys, for the purpose of confidentially communicating with their clients.  <u>Id.</u> at ¶¶ 7–8; <u>see</u> Supp. Vaughn Indices (docket nos. 52-1 and 52-2).  With regard to two (2) of the email strings, plaintiff has withdrawn its earlier objections to the Navy's assertion of attorney-client privilege.  <u>See</u> Pla.'s Supp. Resp. at 2 (docket no. 58) (conceding as to Bates Nos. NPCA00007688 and NPCA00012185); <u>see also</u> Byrnes Decl. at ¶¶ 10 & 34 (docket no. 52).

As to the balance of the redactions at issue, plaintiff contends the Navy has not made a sufficient showing that the JAGs were providing "legal advice."  Plaintiff argues

---

[6] The Court identified 39 records responsive to plaintiff's 2016 FOIA Request and 11 records responsive to plaintiff's 2018 FOIA Request, for a total of 50 records, that had been redacted on the basis of attorney-client privilege.  Order at 18 (docket no. 50); <u>see also id.</u> at 2 (defining 2016 FOIA Request and 2018 FOIA Request).  The Navy indicates that it believes the Court's figures were short by 1 record.  <u>See</u> Byrnes Decl. at 2 n.1 (docket no. 52).  In addition to the 50 or 51 records that were redacted, the Navy asserted attorney-client privilege as to another 95 documents, but the issue of whether the Navy had made a sufficient showing was rendered moot by the Court's ruling that those materials were also appropriately withheld on the basis of the deliberative-process privilege.  <u>See</u> Order at 19–30 (docket no. 50).

ORDER - 7

that the words "input," "guidance," "comments," and "advice," which were used in the Vaughn Indices and the Navy's supporting declaration to describe the services being rendered by the JAGs, do not themselves connote "legal advice." According to plaintiff, "legal advice" is a "communication made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" See Pla.'s Supp. Resp. at 3 (docket no. 58) (citing In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984)). Plaintiff, however, has misquoted the District of Columbia Circuit, and thus, entirely missed its mark. In In re Sealed Case, the standard for attorney-client privilege was partially outlined as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

737 F.2d at 98–99 (quoting United States v. United Shoe Mach. Corp., 89 F. Supp. 357, 358–59 (D. Mass. 1950)). The portion of this passage on which plaintiff relies does not define when a communication **from** an attorney constitutes "legal advice," but rather when a **fact** communicated **to** an attorney is protected from disclosure, i.e., when it was relayed by a client, confidentially, and for the purpose of obtaining legal advice or services. Moreover, the District of Columbia Circuit appended to the above elements the following statement of "black letter" law: "Communications from attorney to client are shielded if they rest on confidential information obtained from the client." Id. at 99. In

ORDER - 8

other words, a lawyer's "input," "guidance," "comments," and "advice," if premised on confidential information from a client, are privileged. Thus, <u>In re Sealed Case</u> does not support, and instead undermines, plaintiff's position.

In an effort to combat the battle of semantics waged by plaintiff, the Navy has proffered yet another declaration indicating that, when the previous declaration said the JAGs were communicating in their capacities as attorneys, what it meant was that the JAGs were providing legal advice about the particular subject or issue identified in the earlier declaration and accompanying Supplemental Vaughn Indices. <u>See</u> Byrnes Decl. at ¶¶ 7–13 (docket no. 67-1). The recent declaration also repeatedly represents that the redacted portions of various emails "do not relate to factual, political, strategic or policy inputs from the Navy attorneys." <u>Id.</u> at ¶¶ 8–12. Plaintiff has moved to strike the most recent declaration, as well as the portions of the Navy's supplemental reply that rely on it. <u>See</u> Pla.'s Surreply (docket no. 68). Plaintiff's motion to strike is DENIED. Contrary to plaintiff's argument, the recent declaration does not offer new evidence in an untimely fashion, but rather presents appropriate clarifications in reply to accusations made by plaintiff in its supplemental response. Having carefully reviewed and considered the supplemental materials presented by the parties, the Court concludes, as a matter of law, that the Navy has met the requirements for asserting attorney-client privilege and FOIA Exemption 5 to redact certain portions of the emails at issue.[7] <u>See</u> Order at 18 (setting

---

[7] With regard to the redacted emails that are responsive to the 2018 FOIA Request, plaintiff contends that the Navy has not complied with the FOIA Improvement Act of 2016, which took effect after the 2016 FOIA Request, but before the 2018 FOIA Request. The provision cited by plaintiff indicates that an agency may withhold information only if it "reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)" of

ORDER - 9

forth the applicable standards, citing <u>Hunton & Williams LLP v. EPA</u>, 248 F. Supp. 3d 220, 253 (D.D.C. 2017)).

**3.      Exemption 6**

  **a.      Appendices J and K**

The Navy was previously directed to show cause why it should not be required to disclose to plaintiff which Navy employees and contractors developed Appendices J and K to the NWTT Final Supplemental EIS/OEIS.  <u>See</u> Order at 34 (docket no. 50).  The Navy has instead identified the individuals who were involved in the development of Appendix J and the portions of Appendix K related to aircraft and who also appear on the list of "preparers" set forth in the NWTT Final Supplement EIS/OEIS.  <u>See</u> Byrnes Decl. at ¶¶ 47–48 (docket no. 52); <u>see also</u> 40 C.F.R. §§ 1502.17 (2019) & 1506.13 (2020).  The Navy has also released to plaintiff various documents with these individuals' names unredacted.  <u>See</u> Ex. B to Byrnes Decl. (docket no. 62-2).  Plaintiff accuses the Navy of failing to comply with the Court's prior Order because, according to plaintiff's expert, the persons recently identified by the Navy (namely, Commander John Mosher, Air Traffic Control and Airspace Officer (Lt. Cdr. (ret.)) Gerald Sodano, and Brian Wauer) lack the "expertise required to undertake a noise analysis."  <u>See</u> Pla.'s Supp. Resp. at 9 (docket

---

5 U.S.C. § 552 or if "disclosure is prohibited by law."  <u>See</u> 5 U.S.C. § 552(a)(8)(A)(i).  Plaintiff's argument that the Navy has not established the requisite foreseeability lacks merit.  Release of attorney-client privileged material inherently harms the interest protected by Exemption 5, which shields from disclosure memoranda or letters that "would not be available by law to a party . . . in litigation with the agency."  <u>See</u> 5 U.S.C. § 552(b)(5).  Moreover, disclosure of attorney-client privileged information would do violence to the principles underlying the privilege and FOIA Exemption 5, namely to encourage candor between lawyers and their clients and promote frank discussion about the legal consequences of possible decisions or approaches.  <u>See</u> Byrnes Decl. at ¶ 6 (docket no. 67-1).

ORDER - 10

no. 58) (quoting Blomberg Decl. at ¶ 8 (docket no. 59)).  The Navy counters that Cdr. Mosher, Officer Sodano, and Mr. Wauer were "the primary authors, contributors, and/or reviewers" for Appendix J and the portions of Appendix K related to aircraft, *see* Navy's Supp. Reply at 4–5 (docket no. 63) (citing Byrnes Decl. at ¶ 15 (docket no. 67-1)), and that plaintiff's request for additional names is inconsistent with the Court's earlier ruling approving the Navy's invocation of Exemption 6 to protect the identities of Navy personnel who were not listed as "preparers" and are not decisionmakers.  The Court is persuaded that, with regard to the individuals involved in developing Appendices J and K to the NWTT Final Supplemental EIS/OEIS, the Navy has provided to plaintiff the responses mandated by FOIA.

          **b.**    **Call with Governor Inslee**

The Navy was also directed by prior Order to file a declaration describing the contents of a document that summarizes a call with Washington Governor Jay Inslee.  *See* Order at 34 (docket no. 50).  In the required declaration, the Navy has indicated that the record at issue consists of a series of emails between Navy JAGs and their clients discussing proposed responses to requests for information made by Governor Inslee during a meeting with Karnig Ohannessian, Deputy Assistant Secretary of the Navy, Environment.  Byrnes Decl. at ¶ 49 (docket no. 52).  Although the Navy previously indicated that these emails were withheld under Exemption 6, *see* Order at 26 n.6 (docket no. 50), the Navy now asserts attorney-client privilege with respect to these materials, *see* Byrnes Decl. at ¶ 50 (docket no. 52); Byrnes Decl. at ¶ 12 (docket no. 67-1).  For the

reasons set forth in Section B.2, *supra*, plaintiff's request that the Court conduct an *in camera* review of Bates Nos. NPCAII00002466–2466_003 is DENIED.

    c. **Frink-Comment**

   As required in the previous Order, with regard to Bates Nos. NPCA00016314–73, titled "Frink-Comment," the Navy has clarified that the only material redacted from the handwritten letter, after coordination with the United States Forest Service, which provided the document to the Navy, was personally identifiable information about two private citizens. *See* Byrnes Decl. at ¶¶ 51–52 (docket no. 52). Plaintiff responds that, on the second and third, typewritten, pages of the document, an individual's name and signature (those of Rebecca Em Campbell) appear in unredacted form, and that, on subsequent documents apparently attached to Ms. Campbell's letter, namely a Research Report by Zorach R. Glaser, Ph.D. dated October 4, 1971, and a Report by Rome Laboratory dated June 1994 (covering the period from June 1988 through May 1993), other identifiers are redacted. *See* Ex. H to Buchele Decl. (docket no. 60-8).

   Plaintiff's cannot complain under FOIA about the disclosure (rather than withholding) of Ms. Campbell's name, and plaintiff's indignation over the redactions in the vintage reports seems unwarranted. To the extent that the reports were submitted by Ms. Campbell to the United States Forest Service in redacted form, plaintiff makes no showing that the Navy was required to search for and disclose the reports in unredacted form. Moreover, the deleted names do not appear substantively useful, consisting of (i) friends, associates, librarians, translators, and the assistant who typed, organized, and edited Dr. Glaser's report, each of whom is thanked in his "Acknowledgements" and all

ORDER - 12

of whom meet the criteria for withholding under Exemption 6, and (ii) the individuals who authored, reviewed, and/or approved for publication the Rome Laboratory report, and who, given the age of the document, are unlikely to still be employed by either the lab or the United States Air Force.  Plaintiff's request that the Court review the "Frink-Comment" materials *in camera* is DENIED, and the Court concludes, as a matter of law, that the Navy's redactions of Bates Nos. NPCA00016314–73 are consistent with FOIA.

### 4. Claim II

In its motion for summary judgment, plaintiff sought a declaratory judgment that the Navy had engaged in a "pattern and practice" of violating FOIA by failing to provide an estimate of the volume of requested materials that had been withheld.  *See* Pla.'s Mot. at 28–29 (docket no. 32).  As the Navy aptly responded, plaintiff never pleaded a "pattern and practice" claim, *see* Compl. (docket no. 1); Supp. Compl. (docket no. 17), and thus, plaintiff is not entitled to the proposed relief.[8]  Moreover, plaintiff has not made the requisite showing that the Navy's alleged policy or practice will impair plaintiff's "lawful access to information in the future."  *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811

---

[8] In relying on a "pattern and practice" theory in its motion for summary judgment, plaintiff appeared to acknowledge that no remedy can be granted for any past failure to comply with FOIA's directive to estimate the amount of records being withheld.  At the Court's direction, the Navy has now provided an accounting of all documents deemed exempt from disclosure, and any further ruling by the Court would be improper.  *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 490–91 (D.C. Cir. 1988) ("'[H]owever fitful or delayed the release of information under the FOIA may be, once all requested [non-exempt] records are surrendered, federal courts have no further statutory function to perform' with respect to the particular records that were requested.  A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution." (citations omitted)); *see also COMPTEL v. FCC*, 910 F. Supp. 2d 100, 127 (D.D.C. 2012).

ORDER - 13

F.3d 1086, 1103 (9th Cir. 2016).  At most, plaintiff has demonstrated some delay in receiving accurate figures concerning the number of records that have been properly redacted or withheld on the basis of one or more FOIA exemptions.  Plaintiff fails to explain how this alleged violation of 5 U.S.C. § 552(a)(6)(F) will impact plaintiff's ability to obtain non-exempt documents through FOIA from the Navy in the future.  As a result, plaintiff's Claim II is hereby DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Plaintiff's motion for reconsideration, docket no. 54, is DENIED in part and STRICKEN in part as moot.

(2) The deferred portions of the Navy's motion for summary judgment, docket no. 27, are GRANTED as to Exemptions 5 and 6 and Claim II and further DEFERRED as to Exemption 3.

(3) The deferred portions of plaintiff's motion for summary judgment, docket no. 32, are DENIED as to Exemptions 5 and 6 and Claim II and further DEFERRED as to Exemption 3.

(4) The deferred portions of the cross-motions for summary judgment, docket nos. 27 and 32, and this case are STAYED until further order.  Within three (3) months of the date of this Order, *i.e.*, by June 30, 2021, the Navy shall file a status report concerning the DCRIT determinations solicited from the Director of Administration.

/ / /

/ / /

(5)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 30th day of March, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 15